IN RE ESTATE OF JOSEPH M. SIDES.
EMMA SIDES, APPELLEE v. J. H. HUMPE, ADMINISTRATOR, APPELLEE: MARY A. GRANT ET AL., APPELLANTS.

FILED JANUARY 24, 1930. No. 26761.

*J. E. Porter,* for appellants.

*Burkett, Wilson, Brown & Wilson* and *C. C. Flansburg,* contra.

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON and EBERLY, JJ., and CHARLES H. STEWART, District Judge.

STEWART, District Judge.

Joseph M. Sides died testate, a resident of Lincoln, Nebraska, on the 9th day of February, 1927. He was twice

married. His first wife died in 1890, the mother of nine children. These, as well as two grandchildren, are involved in this litigation. The second wife and surviving widow is the appellee, Emma Sides. No children were born to this marriage.

By the last will of the said Joseph M. Sides, executed on the 1st day of February, 1923, the surviving widow was given an undivided one-fourth interest in the estate, and the remaining three-fourths was divided into nine parts, one part of which went to each of eight of his children and one part was divided between a daughter and her son and daughter, grandchildren of the testator, each receiving one-third thereof. The estate left by Sides, including the homestead and excluding the notes in controversy, was of the value of $40,215.12, consisting largely of bonds, securities, etc. The notes in dispute aggregate the sum of $41,444.

The surviving widow elected to take under the statute, and not under the will.

In June, 1923, Mr. Sides turned over to his children the sum of $4,000 each. In the case of one of the children, however, the sum of $4,000 was divided between such child and her son and daughter, each receiving a one-third part thereof. There were three classes of distribution: (a) Where the full $4,000 was paid in cash or draft; (b) where part of the $4,000 was paid in draft and cash and the remainder by application upon a note owed by the particular child to the father; (c) where it was paid by the application of the $4,000 upon a note owed by the child to the father.

It is sufficient for this preliminary statement to say that in each instance a note was given by the party to whom money or credit was given. There were eight notes for $4,000 each and three notes aggregating $4,000, making a total of $36,000 of notes. These were all ordinary negotiable demand notes, drawing 4 per cent. interest, and in each note there was written the following clause: "This note to be canceled at the death of Joseph M. Sides and not to be a claim against the undersigned." This provision ap-

peared in the notes at the time they were signed by the makers.

At the time the will was drawn, there were two other notes payable to Mr. Sides. One signed by a daughter, Mary A. Grant, and her husband, on which there was a balance due of $3,000, and one signed by a son, Lawrence Sides, and his wife, on which there was a balance due of $2,400. Neither of these notes contained the provision for cancelation appearing in the notes executed in June, 1923.

This suit was commenced in the county court of Lancaster county by the filing of pleadings by the parties. These will be referred to later. From the findings and orders there made and entered, all parties appealed to the district court for Lancaster county, where a jury was waived and the case tried to the court on the original pleadings and the final report of the administrator. There was a general finding for the petitioner, and that each and all of the notes involved in the controversy were a part of the estate of Joseph M. Sides, deceased, and should be a charge against the respective makers thereof. Judgment was entered on these findings. From an order overruling separate motions for new trial the respondents have appealed to this court.

The pleadings are long and we shall refer only to such essential averments as are necessary for an understanding of the questions presented.

The widow by her petition alleges that all the notes in controversy are the property of the estate, and that the notes signed in June, 1923, notwithstanding the provision for the cancelation contained therein, should be found and held to be a part of said estate for the following reasons: (1) Because said provision for cancelation appearing in said notes was not authorized by the said Joseph M. Sides; (2) because said provision, under the circumstances of the execution, delivery and holding of each of said notes, if authorized, was testamentary in character and void; (3) because, under the laws of the state of Nebraska, the said Sides did not have the power and authority to give the amount of money represented by these notes to the signers thereof without the consent of the petitioner, his wife, for

the reason that the giving of the said notes would be a fraud upon the surviving widow and contrary to the laws of the state of Nebraska. The prayer was that all of said notes be found and decreed to be a part of the estate and owing to said estate by the respective makers thereof.

The respondents filed answer to this petition, denying generally the allegations therein contained, and affirmatively pleading that the administrator is wrongfully in possession of said notes; that the notes executed in June, 1923, were executed by the respective makers thereof upon the express condition and provision for cancelation contained in said notes, and were delivered by the said Joseph M. Sides to one John Hansen, in trust to collect the interest and pay same to the said Joseph M. Sides during his lifetime, or to credit payment of interest thereon when instructed so to do by the said Joseph M. Sides, during his lifetime, and that at his death said notes should be and become canceled and void and delivered up by said Hansen to the respective makers thereof for cancelation; that said conditional notes were executed by said respective makers upon the express understanding and agreement by and between the said Joseph M. Sides, the respective makers thereof, and the said Hansen, that said notes would be so delivered to and held by said Hansen as and for the purpose hereinbefore alleged, and that they were so held by said Hansen pursuant to said delivery to him and said agreement, and that they were surrendered to said administrator with will annexed, after the death of Joseph M. Sides, without the knowledge or consent of the said Hansen or of the respective makers thereof, and the same are void and should be ordered returned to said Hansen for cancelation and surrender to the makers in accordance with the said contract and the terms of delivery to him and the trust under which he held the same. The same allegations are made with respect to the other two notes in question, except it is admitted that these notes do not contain the written provision for cancelation. It is further alleged that said notes are not assets of said estate, but were gifts

made in good faith by said Joseph M. Sides to said respective makers.

Reply was filed by petitioner denying matters set forth in the answer.

It conclusively appears from the evidence that the provision for cancelation appearing in the notes executed in June, 1923, was placed in said notes before the signing thereof with the knowledge and by the express direction of Mr. Sides; that he actually turned over to each of the children the sum of $4,000, in cash or credit, during his lifetime and before the execution of said notes, is also fully established. The only direct competent evidence contained in the record as to what was actually done with these notes after their execution and delivery to Mr. Sides is to be found in the testimony of the witnesses, Hansen, June Sides, and Mrs. Scott Sides. Other testimony received on that subject was that of incompetent witnesses, made so by the statute as it relates to transactions and conversations with deceased persons in this class of cases.

This testimony as a whole establishes the contention of the appellants that, after the execution thereof by the Sides children, these notes were deliverd by Mr. Sides to Hansen, with directions that the interest thereon be paid to him or credited as by him directed during his lifetime, and that in case of his death the notes should be canceled and returned to the makers thereof. The testimony of Hansen further shows that he received these notes pursuant to this delivery and under these instructions, and that in obedience to his trust he held them until after the death of Mr. Sides. It appears that after the death of Sides, upon some order of court, the bank owning the deposit box containing said notes delivered them to the administrator. This was done without the knowledge or consent of either Hansen or the makers of the notes. It further is established by the evidence that Mr. Sides never had possession of any of these notes after he turned them over to Hansen. There is some evidence suggesting that the delivery of the notes by the bank to the administrator was upon some agreement or

stipulation that the notes should be held by the administrator pending final determination of court proceedings.

It thus appears clearly established by the record in this case that Sides himself, Mr. Hansen, and all the children who received the money and gave the notes did everything within their power to carry out the arrangement claimed by appellants. There is no direct evidence offered by appellee in denial of this testimony as to what was said and done concerning the notes executed in June, 1923. It is pointed out by appellee that Mr. Sides did not deliver these notes to Hansen immediately upon their execution, but took them back to Lincoln with him and did not turn them over to Hansen until some time later, and that when he did receive the notes Hansen placed them in a safety deposit box in some bank in his home town in the western part of the state, the box being one owned by Mr. Sides and one to which Sides, as well as Hansen, had access. There were no other papers in the safety deposit box. A sufficient answer to this would be that Mr. Sides never thereafter exercised any dominion over said notes and never at any time did anything inconsistent with the delivery claimed by the appellants. On the other hand, the delivery of the notes to Hansen at Lincoln for the purpose of carrying out the trust claimed by appellants was the natural and necessary thing to do if the intention of Mr. Sides, as expressed in the notes, was to be carried out.

In this state of the record, we cannot agree with counsel for appellee that anything in this entire transaction between Sides and his children was testamentary in its nature. The intention to make an absolute gift is too apparent to be seriously questioned. Sides did everything he could to carry this into effect. It must be remembered that the thing given was the money. But for the notes, this would have constituted an absolute, irrevocable and completed gift during the lifetime of Mr. Sides, with no reservation of interest therein to himself. The notes were merely evidence of the agreement whereby the father reserved to himself during his lifetime an annuity equal to 4 per cent. of the amount of the gift. As such a contract,

it created a species of life estate, and like any other trust or declaration of that nature could not bind the maker any further than the plain terms of the instrument itself provides. The delivery of the notes to Hansen during the lifetime of Mr. Sides in trust, as hereinbefore set out, was sufficient to entirely remove the transaction from that class of transfers known to the law as testamentary. *Dinslage v. Stratman*, 105 Neb. 274. The mere reservation of interest to the donor during his lifetime does not invalidate the gift. *Novak v. Reeson*, 110 Neb. 229.

We therefore conclude that, as to the conditional notes executed in June, 1923, there was an absolute and completed gift of the $4,000 to each of his children by Mr. Sides during his lifetime and that said children became fully vested with title thereto; that the said notes are no part of the estate of Joseph M. Sides, deceased, and the administrator is in the wrongful possession thereof, unless, as contended by the appellee, the gift was made by the father with the intent to defraud his surviving widow and was made under such circumstances as to amount to fraud, either constructive or actual, against her under the laws of the state of Nebraska. This branch of the case will receive our attention later.

It must be conceded that the evidence of intention to make a gift of the two remaining notes in controversy is much less convincing. In the first place, the notes themselves contain no provision for cancelation or other written words from which such intent could be gathered. Further than this, they were executed and delivered to Mr. Sides, for a consideration theretofore paid, and were in his possession prior to and at the time of the making of his will in 1923. While it is probably true that the will could affect only such property as the testator owned and controlled at the time of his death, yet we think one provision in this will is very helpful in arriving at the intent with which Sides later on delivered these particular notes to Hansen. The provision is as follows:

"From time to time heretofore I have made loans of money to several of my children, taking their notes therefor.

It is my will and I hereby direct that the sums of money so loaned shall be considered as an advancement and so constitute a part of my estate, and shall be charged to each of such children respectively as an advancement; except and unless, the notes themselves shall provide that they are to be canceled upon my death; in which event, it is my will that said notes shall be canceled; that the sums so given to said children shall not be considered an advancement, but as a gift, and shall not be or become a part of said estate."

These considerations lead us to the conclusion that it was never the intention of Mr. Sides to make a gift of these two notes, or the debt thereby evidenced, to the makers thereof. The matter of the distribution of his property received the careful thought and attention of this man. He consulted counsel with regard to these transactions and apparently took a long and no doubt tedious trip to the western part of the state to make sure that every detail of his proposed bounty was carried out according to his wishes. It is inconceivable that at this time the matter of making definite arrangements for the gift of these two notes was overlooked if he had any such intention. It is more probable that these notes were delivered to Hansen merely to facilitate the collection and indorsement of interest thereon.

From the record before us as to these two notes, we conclude that neither of them was ever lawfully transferred by Mr. Sides during his lifetime, or that he ever had any intention of making a gift of them to the makers thereof; that they are a part of the Sides estate, and, as such, properly in the possession of the administrator thereof, valid and enforceable obligations of the makers thereof.

Finally, we are called upon to consider the issue of fraud presented.

On the question of the effect of the transfer of personal property by a husband during his lifetime which operates to diminish the distributive share the wife would otherwise have in the estate, there is some slight conflict in the decisions of the several states. This is due, no doubt, to the statutory provisions of the several states covering the matter of the wife's right to an interest in the property of the

husband. However, substantially all authority is to the effect that the question of good faith is controlling. If the transfer of personal property by the husband during his lifetime is a mere device and means by which he retains to himself the use and benefit of the property during his lifetime, and at his death seeks to deprive the widow of her distributive share, it is to be regarded as fraudulent as to the wife. No more favorable statement of the rights of the wife in this state is warranted either by our statute or the decisions of this court. As to his personal property, the husband, if competent, during his lifetime is wholly unrestricted in the enjoyment of all the incidents and attributes of ownership, except as limited by section 2550, Comp. St. 1922. No cases directly bearing on this question are cited in the briefs and we have been unable to find any case decided by this court where the precise question has been determined. However, a reading of the Nebraska statute on the subject removes all question as to the correctness of the rule just announced. In the case of *Allen v. Henggeler,* 32 Fed. (2d) 69, the circuit court of appeals for this district, in passing upon the Nebraska statute, in an opinion by Judge McDermott, states the rule substantially as here stated.

On the issue of fraud presented, the burden of proof is upon the surviving widow to establish by a preponderance of the evidence that, in making these gifts to his children, the father was actuated by bad motive and fraudulent intent, and that the entire transaction was a mere device by which he sought to defraud her. *Krull v. Arman,* 110 Neb. 70. It is the general rule that fraudulent intent is not presumed, but must be proved by the party asserting it.

Upon a careful study of all the testimony, we are unable to see where any finding of fraud is supported by the record in this case. In arriving at this conclusion, we have taken into consideration the relationship of all the parties; the amount of the Sides estate and its history as shown by the evidence; the value of the gifts; the time and manner of making them and the extent to which the children participated. It is important to remember that here a father was

dealing with his wife and children, both having legitimate claim to his affections. It is not denied, and the evidence clearly shows, that the first wife and her children made large contribution to this estate. To the one it represented patient self-denial; to the other, denied opportunity. It is not strange, as shown by the evidence, that this mother, about to say goodbye to her loved ones, should remind the husband of his duty to her children in the matter of the final disposition of his property. Common fairness would prompt him to respect her wishes. It nowhere appears from the evidence that this father bore toward these children anything other than natural love and affection. It is but natural to assume that in the closing days of his life this old man, in memory, returned often to the scene of his early struggles and lingered long with the devoted young wife who so willingly surrendered herself to every demand of poverty and young romance. Here again, no doubt, were rekindled the smoldering fires of parental devotion. Inspiration was not lacking, and these gifts appear to have been prompted by generous motives arising naturally from the relationship of parent and child. Under all the circumstances, it cannot be said that these gifts were unreasonable, but rather they appear to have been in complete accord with the natural inclinations of the human heart. In the absence of positive fraud, such disposition of property will not be disturbed. It is not for the courts to say how a man shall bestow his bounty, so long as he acts in entire good faith with those having legitimate demands upon him. In the present case, the widow cannot complain because she did not receive more, so long as she is given that portion of her husband's property to which, at the time of his death, she is entitled under the Nebraska statute.

The evidence is insufficient to support the findings and judgment of the district court. The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.